<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WALTER MEDLEY, ET. AL., <br><br>                    Plaintiffs, <br><br> v. <br><br><br> FREIGHTLINER LLC, ET. AL., <br><br>                    Defendants. | Civ. No. 07-1580 (DRD) <br><br> **O P I N I O N** |

*Appearances by:*

LEONARD & LEONARD, P.A.
by: Scott G. Leonard, Esq.
165 Washington Street
Morristown, NJ 07960

   *Attorneys for Plaintiffs,*

HANLON, BOGLIOLI & HANLON, P.C.
by: Richard J. Mirra, Esq.
523 Raritan Center Parkway
PO Box 6147
Edison, NJ 08818

   *Attorneys for Defendants.*

**<u>DEBEVOISE, Senior District Judge</u>**

   This matter comes before the Court on a motion by Defendants Freightliner LLC

("Freightliner") and Penske Truck Leasing ("Penske") for summary judgment pursuant to

Federal Rule of Civil Procedure 56. Plaintiff Walter Medley is a tractor trailer truck operator

employed by CBF Trucking, Inc ("CBF"). While stepping to the ground from the platform behind the cab of the Freightliner model FLD 120 truck he was operating on May 11, 2005, Mr. Medley fell and sustained injuries. Arguing that his fall was caused by a design defect – Freightliner's failure to include a step at the base of the battery box situated next to the deck platform where drivers were required to stand in order to connect pneumatic brake lines to the back of the truck cab – Mr. Medley and his wife, Bobbye Medley, filed a suit against Defendants in the Superior Court of New Jersey on February 22, 2007.[1] Based on diversity of citizenship, Defendants removed the action to this Court on April 4th of that year.

Defendants argue that summary judgment is appropriate on both of Plaintiffs' claims, design defect and failure to warn. Regarding the former, Defendants contend that Plaintiffs cannot demonstrate that the alleged design defect caused Mr. Medley's injuries, because his own conduct was the "sole proximate cause of the accident." Defendants argue that summary judgment is appropriate on the failure to warn claims because (1) the risk of falling off the deck platform was open and obvious, and (2) the truck included a decal warning of that risk, which Mr. Medley testified that he would have noticed if he had paid proper attention.

For the reasons set forth below, the Court agrees that the truck from which Mr. Medley fell was defectively designed, but not due to Freightliner's failure to include a step at the base of the battery box. To the contrary, Freightliner was not required to include such a step. Since Mr. Medley's injuries were caused by the failure to include a step at the base of the battery box and that failure did not, in and of itself, render the truck defective, the Court will grant summary

---

[1] Plaintiffs originally named as defendants Freightliner Corporation, Freightliner LLC, DaimlerChrysler Corporation, Penske Truck Leasing, and various fictitious companies and individuals. The claims against DaimlerChrysler Corporation were dismissed pursuant to a stipulation of the parties on September 28, 2007. Freightliner Corporation no longer exists, having been restructured into Freightliner LLC. Therefore, the only two remaining non-fictitious defendants are Freightliner LLC and Penske Truck Leasing.

judgment on Plaintiffs' design defect claim. With respect to Plaintiffs' failure to warn claim, the Court agrees that the risk of falling off the deck platform was open and obvious, and finds that the warning decal affixed to the battery box gave sufficient notice to users that it was not to be used as a step. Therefore, summary judgment will be granted on Plaintiffs' failure to warn claim.

## I. BACKGROUND

The tractor trailer from which Mr. Medley fell was designed and manufactured by Freightliner. After its release from Freightliner's Cleveland, Ohio plant on July 29, 1996, it was sold to Penske. Rather than design or manufacture vehicles itself, Penske serves as a wholesaler; it purchases vehicles from Freightliner and then negotiates to lease or resell those vehicles to trucking companies or individual truck drivers. Although it does not personally modify any of the vehicles it purchases from Freightliner, Penske advises potential buyers regarding optional features that may be added to a given truck when it is resold and submits customer orders for such modifications to Freightliner, which then makes the requested changes.

The truck in question was one of 45 Freightliner vehicles leased in 2001 to Mr. Medley's employer as part of a program in which the company agreed to lease the trucks from Penske for a period of two years, during which time it could purchase the used vehicles at a price substantially lower than that of a new tractor trailer. In 2002, CBF exercised its option to buy the vehicles outright. The purchase agreement explicitly stated that the trucks were sold "as is" and specifically disclaimed all express and implied warranties of fitness and merchantability. (Defs.' Br. Supp. Mot. Summ. J., Ex. H.) Although Penske was responsible for maintaining the vehicles during the lease period and made various repairs to the truck from which Mr. Medley fell, no modifications were made to the battery box or steps that provided back-of-cab access.

Beginning in 1997, Freightliner changed the design of its FLD120 truck to move the fuel tanks, which hang just below the driver's side door of the vehicle and extend backward behind the cab for varying distances depending on their size, forward by half an inch and add a step at the base of the battery box. According to the Defendants, the latter change resulted automatically from the former pursuant to the standardized program of "compatibility rules" that Freightliner followed when designing trucks. (Defs.' Statement of Facts ¶ 30.) Thus, all FLD120 trucks manufactured after 1997 included a step at the base of the battery box, while the truck from which Mr. Medley fell – which was built in 1996 – did not.

At the time of his accident, Mr. Medley had been operating tractor trailers for almost forty years, four of which were spent at CBF. Mr. Medley's regularly-assigned CBF truck was a Freightliner FLD120 manufactured after 1997, and thus was equipped with a step at the base of the battery box. On the morning of the accident, however, Mr. Medley was informed that his vehicle was undergoing maintenance and was instructed to use a replacement vehicle. That truck, a Freightliner FLD 120 manufactured in 1996, did not have a step at the base of the battery box. Rather, it had steps attached to the fuel tank just below the driver's side door, while the battery box bore a decal reading "Warning, not a step."

Before leaving CBF headquarters the day of his accident, Mr. Medley completed an inspection of his replacement vehicle. In doing so, he noted the lack of a step at the base of the battery box. (Medley Dep. 63:5-17, Jan. 9, 2008.). After a few hours, however, he forgot that he was not driving his usual truck. (Id. at 77:7-17.) While on a delivery, Mr. Medley ascended the platform at the back of the truck cab in order to attach pneumatic brake lines. Under the assumption that there was a step at the base of the battery box, Mr. Medley attempted to climb

4

down from the platform by stepping backward off the box.  When his foot met only air, he lost his balance and fell to the pavement below.

## II.  DISCUSSION

Plaintiffs allege that Mr. Medley's fall was the result of a defect in the design of the truck.  Specifically, they contend that Freightliner's failure to include a step at the base of the battery box rendered the truck unfit for its reasonable and foreseeable uses.  In support of that assertion, Plaintiffs commissioned an expert report by Gabriel G. Alexander, an engineer with experience in the design and maintenance of tractor trailers.  Mr. Alexander concluded in his report that the means of accessing the platform behind cab of the truck in question – two steps affixed to the fuel tank just below the driver's side door of the truck – did "not comply with industrial standards at the time the vehicle was manufactured," including those promulgated by the Society of Automotive Engineers.  (Defs.' Br. Supp. Mot. Summ. J., Ex. L at 15.)  That conclusion was premised on Mr. Alexander's findings that (1) protruding brackets at the rear of the top fuel tank step posed a tripping hazard for users taking the required lateral step to the back-of-cab platform, (2) the gap between the top fuel tank step and the platform was, at 30 inches, unreasonably large, and (3) the fuel tank steps were too narrow.  (Id.)

In the pending motion, Defendants contend that they are entitled to summary judgment on Plaintiffs' design defect claim because Mr. Medley's conduct – in assuming that the truck he was operating the day of the accident had a step at the base of the battery box and stepping off the platform without verifying that such a step existed – was the "sole proximate cause of the accident."  With respect to Plaintiffs' failure to warn claim, Defendants argue that summary judgment is appropriate because (1) the risk of falling off the platform was obvious, and (2) the truck included a decal warning of that risk.

5

**A. Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no questions that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**B. Design Defect**

In order to prevail on a design defect claim, a plaintiff "must prove that (1) the product was defective; (2) the defect existed when product left the hands of the defendant; and (3) the defect caused [an] injury to a reasonably foreseeable user." Jurado v. W. Gear Works, 619 A.2d 1312, 1317 (N.J. 1993). "Whether a product is defective depends on whether it 'is not reasonably fit, suitable and safe for its intended or reasonably foreseeable purposes.'" McGarvey v. G.I. Joe Septic Serv., Inc., 679 A.2d 733, 740 (N.J. Super. App. Div. 1996) (quoting Jurado, 619 A.2d at 1317). New Jersey courts use a seven-factor balancing test to determine whether a product is fit for its intended uses, considering:

> (1) the usefulness and desirability of the product; (2) the likelihood and seriousness of injury; (3) the availability of a substitute product; (4) the manufacturer's ability to eliminate the danger without impairing the product's utility; (5) the user's ability to avoid danger by due care; (6) the user's anticipated awareness of the danger considering general public knowledge or the obvious condition or the existence of suitable warnings or instructions; and (7) the feasibility of the manufacturer's spreading the loss by setting the price or carrying liability insurance.

McGarvey, 679 A.2d at 740.

The above-mentioned balancing test does not lead conclusively to a finding that the truck at issue in this case either was or was not defective. It is obvious that the tractor trailer was useful and desirable, as such trucks are a necessary device in ensuring the flow of goods throughout the country. While the likelihood that a driver would fall from the platform behind the cab was high, the relatively short distance between that platform and the ground meant that the seriousness of foreseeable injuries from such falls was fairly low. Freightliner's addition of a step at the base of the battery box on FLD120 vehicles manufactured after 1997 demonstrates conclusively that such modifications were feasible without impairing the truck's utility.

7

However, the obvious absence of such steps on pre-1997 models was a factor that would be clear to most, if not all, users, and made it easy for operators to avoid falls such as the one suffered by Mr. Medley through the use of due care.  With respect to the final factor, Freightliner could easily have paid for a modification by selling its trucks for a slightly higher price, and although there is no evidence in the record regarding whether the company is insured, obtaining such insurance would seem a reasonable and prudent measure for a manufacturer of industrial equipment such as tractor trailers.  Thus, the first, fifth, and sixth factors in the balancing test used by New Jersey courts weigh against finding the truck defective, while the third, fourth, and seventh weigh in favor and the second is neutral.

It is worth noting, however, that the Occupational Health and Safety Administration ("OSHA") has promulgated standards regarding the design of tractor trailers such as the one from which Mr. Medley fell.  While those standards are addressed to the duty of care owed to employees by their employers, 29 U.S.C. § 654, they nevertheless may serve as evidence of the reasonableness of a design in a case brought directly against the manufacturer of an allegedly-defective product.  Rollick v. Collins Pine Co., 975 F.2d 1009, 1013-14 (3d Cir. 1992).  In consulting OSHA regulations regarding the design of tractor trailers, the Court does not apply those regulations directly to Freightliner, but rather "'borrow[s]' the OSHA regulation for use as evidence of the standard of care owed to [P]laintiff[s]." Id.  The use of OSHA standards as evidence of the proper standard of care is especially appropriate where, as here, the product at issue was designed for industrial use by trained professionals rather than the general public.  In such cases, a product that falls below the standard of care applicable to employers would be virtually useless, as the market for that product is made up almost entirely of employers purchasing equipment for use by their employees.

8

The OSHA regulation on "truck and truck-tractor access requirements" states that "[a]ny person entering or exiting the cab or accessing the rear portion of a … truck or truck-tractor shall be afforded sufficient steps and handholds, and/or deck plates to allow the user to have at least 3 limbs in contact with the truck or truck-tractor at any time." 49 C.F.R. 399.207(a). In order to assure that users are able to maintain sufficient contact with the vehicle when accessing the platform behind the cab, the OSHA standard goes on to enumerate with exhaustive specificity the requirements for the steps used to gain such access. With respect to "vertical height," the regulation states that "the first step shall be no more than 609 millimeters (24 inches) from ground level." 49 C.F.R. § 399.207(b)(2)(ii). The "distance between steps" must be small enough to "provide any person a stable resting position which can be sustained without body motion and by exerting no more than 35 percent of the person's body weight per grasp during all stages of entry and exit." 49 C.F.R. § 399.207(b)(2). Importantly, the OSHA regulation does not require that steps be included on any particular part of the truck or that the operator be given multiple points of access to the platform at the rear of the cab. Similarly, Plaintiffs' expert, while finding that the truck from which Mr. Medley fell was defective, did not do so on the basis that there was no step at the base of the battery box. Rather, Mr. Alexander took issue with the fact that the steps affixed to the truck's fuel tanks had protruding brackets that posed a tripping hazard and were situated too far from the platform behind the vehicle's cab. (Defs.' Br. Supp. Mot. Summ. J., Ex. L at 15.)

The Court finds, in light of the aforementioned OSHA and industry standards cited by Plaintiffs' expert, that the steps included on pre-1997 FLD120 tractor trailers were defective. The 30-inch distance between the top step and the back-of-cab platform, coupled with the brackets at the rear of the top step, created an unreasonable risk that users would fall from the

9

vehicle.  It does not follow, however, that Mr. Medley's injuries were caused by that defect.  Mr. Medley fell after stepping off the battery box, not while transitioning between the top fuel tank step and the platform at the back of the cab.  While Defendants had a duty to remediate the defects in the back-of-cab access system on pre-1997 Freightliner FLD120 trucks, nothing in the law required them to do so by including a step at the base of the battery box.  To the contrary, it appears that the defect could have been corrected by simply removing the brackets at the end of the top fuel tank step and extending that step backward in order to decrease the distance between it and the platform.  Alternatively, Freightliner could have installed steps another part of the truck chassis.  Finally, the company could have simply installed a deck plate at the top – but not the base – of the battery box, thus allowing users to take a short intermediate step to that platform before transitioning to the one behind the cab.  In any of those cases, the truck would not have been defective, but there would have been no step at the base of the battery box.  Therefore, the Court finds that the defects in the truck's back-of-cab access system were not a cause in fact of Mr. Medley's injuries, and will grant summary judgment on Plaintiffs' design defect claim.  See, e.g., Jurado, 619 A.2d at 1317 (In order to prevail on a design defect claim, the plaintiff must prove that "the defect caused the injury to a reasonably foreseeable user."); Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 74 (3d Cir. 1996) (Under New Jersey law, the plaintiff in a design defect action "must introduce evidence which provides a reasonable basis for the conclusion that it was more likely than not that the negligent conduct of the defendant was a cause in fact of the injury.").

### C. Failure to Warn

Summary judgment is also appropriate on Plaintiffs' failure to warn claim.  Under New Jersey law, the manufacturer of a product has no duty to warn against dangers that are "open and

obvious." Matthews v. Univ. Loft Co., 903 A.2d 1120, 1124 (N.J. Super. App. Div. 2006) (holding that the trial court should have granted summary judgment on failure to warn claims brought by college student after falling out of bunk bed). Additionally, a manufacturer may avoid liability "for harm caused by a failure to warn if the product contains an adequate warning or instruction." N.J. Stat. Ann. § 2A:58C-4.

It is difficult to imagine a more "open and obvious" risk than the one at issue in this case – the danger of falling from a raised platform. In fact, Mr. Medley admitted in his deposition testimony that he knew there was no step at the base of the battery box of the vehicle he was driving the day of the accident and was aware of the danger of falling from the platform. (Medley Dep. 63:5-17.) Moreover, there was a decal affixed to the battery box, which stated "Warning, not a step." Mr. Medley testified that he would have noticed the decal and heeded its warning if he had looked down before stepping off the battery box. (Id. at 78:7-79:17.) Therefore, the Court finds that the risk of falling was open and obvious, and the warnings given were adequate. Summary judgment will be granted on Plaintiffs' failure to warn claims.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted, and Plaintiffs' claims are dismissed in their entirety.

The Court will enter an order implementing this opinion.


       s/ Dickinson R. Debevoise
      DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: June 1, 2009